NOT FOR PUBLICATION                                    [Docket No. 53]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| MARGARET REYNOLDS, individually as Administratrix to the Estate of Daniel Reynolds, Deceased,<br><br>          Plaintiff,<br><br>     v.<br><br>CORRECTIONAL MEDICAL SERVICES, INC., WILLIAM ANDRADE, JAMES NEAL, M.D., JAMES RUMAN, R.N., ROCK WELCH, ABU AHSAN, M.D., JANE AND JOHN DOES (1-10), SHEREE STARRETT, M.D., MYRIAM STERLIN, M.D., ROSEMARY MCMENAMIN, R.N., RIZWANA NAVEED HAMID, M.D., KANTIPRASAD PARIKH, M.D.,<br><br>          Defendants. | Civil No. 04-3416 (RMB)<br><br>**OPINION** |

APPEARANCES:
    Daniel Weinstock
    Feldman, Shepherd, Wohlgelernter, Tanner & Weinstock
    1845 Walnut Street, 25th Floor
    Philadelphia, PA 19103
        and
    Rosemary Pinto
    Feldman & Pinto
    1604 Locust Street, 2R
    Philadelphia, PA 19103
        Attorneys for Plaintiffs

    Gary Lesneski
    Kerri Chewning
    Archer & Greiner, PC
    One Centennial Square
    P.O. Box 3000
    Haddonfield, NJ 08033
        Attorneys for Defendants

**BUMB**, United States District Judge:

**INTRODUCTION:**

This matter comes before the Court upon Defendants' motion for summary judgment. Plaintiff is the mother and Administratrix of the Estate of Daniel Reynolds, a former inmate in the New Jersey State prison system who was paroled in November, 2002. Mr. Reynolds died from end stage liver disease and HIV infection in April, 2003. Defendant Correctional Medical Services, Inc. ("CMS") is a corporation that arranges for the provision of medical care to the inmates of the New Jersey prison system under contract with the New Jersey Department of Corrections. Defendants William Andrade, M.D., James Neal, M.D., James Ruman, R.N., Rock Welch, and Abu Ahsan, M.D. (collectively with CMS, the "CMS Defendants"), are individuals who held administrative positions with CMS during the time alleged in Plaintiff's Complaint. Defendants Sheree Starrett, M.D., Myriam Sterlin, M.D., Rosemary McMenamin, R.N., Rizwana Naveed Hamid, M.D., and Kantiprasad Parikh, M.D. (collectively, the "Treating Defendants") are medical professionals engaged by CMS who were involved in the treatment of Daniel Reynolds during his incarceration.

Plaintiff's Complaint consists of three counts: Count I is a § 1983 claim against all Defendants for violation of Daniel's Eighth Amendment Right to be free of cruel and unusual

punishment; Count II is a negligence claim against the CMS Defendants; and Count III is a negligence claim against the Treating Defendants.  Plaintiff brings these claims on behalf of her son's estate pursuant to the New Jersey Survival Act.[1]  Defendants now move for summary judgment as to all claims.

**FACTUAL BACKGROUND:**[2]

Daniel Reynolds entered the New Jersey State prison system in July, 1997, at age 35, following convictions for robbery, drug possession, and related offenses.  (Def. SOF ¶ 9).  Mr. Reynolds was paroled in May, 2002, re-incarcerated for drug use in violation of his parole in July, 2002, and paroled again in November, 2002.  (Id.).  As shown on his intake form, he had a history of heroine and cocaine abuse and was diagnosed with HIV/AIDS in 1985.  (Anicette Aff. ¶ 9, Ex. A at 1-4).  Mr. Reynolds received treatment for his HIV/AIDS infection from the beginning of his incarceration until August, 2000, when it was determined that the anti-viral medication was causing him serious

---

[1] Initially, Plaintiff also brought these claims pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1.  However, in her opposition, Plaintiff voluntarily withdrew her claims under the Wrongful Death Act, admitting that she could not "show any pecuniary loss attributable to the death of Mr. Reynolds."  (Pl. Opp. at 20).

[2] The facts are derived from the parties' Rule 56.1 Statements of Fact ("SOF"), their exhibits, and their motion papers and are set forth in a light most favorable to the Plaintiff.

liver damage. (Id. at ¶ 10, Ex. A at 5, 7, 11, 15, 20, 31, 32). Although the anti-viral drug regimen was stopped, he continued to be closely monitored and treated for various medical issues related to his HIV/AID infection. (Anicette Aff., Ex. A at 36, 45-46, 66-67, 77-78, 92-94, 112-115).

In July 1998, Mr. Reynolds tested as "repeatedly reactive" to the Hepatitis C virus ("HCV") antibody. (Id. at 13). Throughout his remaining incarceration, Mr. Reynolds was educated about his HCV condition and its relation to his HIV condition and treatment. (Id. at 31-35, 36, 41-43, 54, 66-67, 77-78, 112-114, 119). He also submitted several Health Services Requests Forms inquiring about his HIV condition and his "liver problem." (Id. at 30, 37, 97, 108). However, while incarcerated, Mr. Reynolds did not receive any drug therapy (interferon or ribavirin) for his HCV condition. (Def. SOF ¶ 20).

Mr. Reynolds was initially paroled in early May, 2002, but was re-incarcerated in August, 2002, for parole violations - namely, drug use. (Id. ¶ 33). When he returned to prison, his condition had deteriorated. (Id. ¶ 34). From the time he was re-incarcerated until the time he was paroled a second time (November, 13, 2002), Mr. Reynolds was treated for a variety of conditions, including leg swelling, nose bleeds, hematuria, fatigue, cystitis, among other problems. (Anicette Aff., Ex. A at 130-31, 133-37, 148-49). However, his condition continued to

4

deteriorate and in October, 2002, he was noted as having a palpable liver. (Id.). On November 13, 2002, Mr. Reynolds was paroled with the recommendation that he follow up with his private physician for treatment. (Id. at 148-49). Mr. Reynolds died on April 23, 2003 due to end stage liver disease and HIV infection (as listed on his death certificate). (Chewning Cert., Ex. E).

Plaintiff filed a Complaint on July 19, 2004, alleging claims based upon 42 U.S.C. § 1983 and common law negligence. Defendants have moved for summary judgment on all claims.

**APPLICABLE STANDARD:**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. See id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. See id. "In making this determination, a court must make all reasonable inferences in favor of the non-movant." Oscar Mayer

Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D. N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)). "At the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**DISCUSSION:**

Defendants argue that all of Plaintiff's claims under the New Jersey Survival Act are barred by the two-year statute of limitations. The New Jersey Survival Act provides,

> In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor or administrator may recover all reasonable funeral and burial expenses in addition to damages accrued during the lifetime of the deceased.

N.J.S.A. 2A:15-3. Thus, the Survival Act allows the executor or administrator of the decedent's estate to step into the shoes of the decedent and bring any claim the decedent may have had, had he survived. However, the Survival Act does not alter or toll the applicable statute of limitations; rather, each claim maintains its limitation period.

"The statute of limitations for any Section 1983 claim is the state statute which limits actions for personal injuries." Cito v. Bridgewater Twp. Police Dept., 892 F.2d 23, 25 (3d Cir. 1990). Accordingly, Plaintiff's § 1983 and negligence claims are

6

all governed by N.J.S.A. 2A:14-2, which provides,

> [e]very action at law for an injury to the person caused by a wrongful act, neglect or default of any person within this state shall be commenced <u>within two years next after the cause of any such action shall have accrued</u>.

N.J.S.A. 2A:14-2 (emphasis added).  The accrual of Plaintiff's § 1983 claim is governed by federal law, which provides that, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." <u>Montgomery v. De Simone</u>, 159 F.3d 120, 126 (3d Cir. 1998) (internal quotations and citation omitted). Concerning the accrual of Plaintiff's negligence claims, "suit must be filed within two years of the accrual date, which generally is the date of the negligent act or omission." <u>Szcuvelek v. Harborside Healthcare Woods Edge</u>, 182 N.J. 275, 281 (2005).[3]

Defendants argue that Plaintiff's claims under the Survival Act accrued sometime between 1997 and 2000.  They assert that Mr. Reynolds "knew in 1997 that he had HCV, knew that the physicians would not treat him, knew that he would die from the disease, and

---

[3] This is in contrast to claims brought under the Wrongful Death Act, where the two-year statute of limitations begins to run upon the date of the decedent's death.  <u>See</u> <u>Kotkin v. Caprio</u>, 65 N.J. Super. 453, 458 (App. Div. 1961) ("[u]nder our statutes, when the injured person dies as a result of the accident while he still has a cause of action for his injuries, the cause of action for his injuries passes to his estate, while a new and separate cause of action, with its own statute of limitations, arises in favor of the beneficiaries named in the Death Act").

believed that the reasons given for not treating him were expense and his continuing use of drugs..." (Def. Motion at 15).  This knowledge, Defendants contend, was sufficient to start the statute of limitations.  To support their argument, Defendants refer to Plaintiff's deposition as well as Mr. Reynolds' medical records.

    In her deposition, Plaintiff gave the following testimony:

Q: Did Daniel tell you back in that period of time when he came back from prison in March [2002] the first time, did he tell you what he thought he was dying of?

A: He told me that when he was on the phone right after they incarcerated him.

Q: In 1997?

A: Yeah.  When he first went in, he called me hysterical.

Q: Telling you what?

A: That they said that he had Hepatitis C and we do not treat it.  And he said – and he kept – and he was crying so bad, I couldn't understand.  And I said calm down, what are you talking about?  I have a death sentence.  I have a death sentence.  And I said I don't understand.  And he said, well, they told me they don't treat it.  So they are giving me six to 10 years, so it's a death sentence to me cause I am not going to get treated for it.

Q: Did he tell you who told him that?

A: When he went through that period of you can't talk to and see him, I guess the entrance period of when you are going into prison.

Q: No, what I'm really trying to ask you –

A: What doctor?

> Q: – this is in 1997. Shortly after he was incarcerated, he told you this; is that correct?
>
> A: Yes.
>
> Q: He called on the phone from prison?
>
> A: Yes. Once he got in the prison system, cause it was a couple months that they said they were testing and whatever.
>
> ...
>
> Q: All right. And you understood that he was telling you that somebody who was providing medical care to him at the prison told him this?
>
> A: Yes.
>
> Q: That he had Hepatitis C and he had a six to 10-year life span and they wouldn't treat it?
>
> A: Right.
>
> Q: Did he tell you what rationale or reason was given to him, if any, as to why his Hepatitis C would not be treated?
>
> A: They told him it was a very expensive thing, and plus the fact they didn't know – you know, they don't like doing things like that unless they figure for sure you are really sincere about giving drugs up. And since he was going to be in the prison system and there is more drugs in there than there's out on the street, I think.

(Pl. Dep. 22:16 - 25:1 (Chewning Cert., Ex. D) (counsel objections omitted)).[4] Defendants argue that this testimony demonstrates that Mr. Reynolds knew of his HCV condition, the fact that he would not be treated for it, and the alleged reason

---

[4] Plaintiff's deposition regarding what Mr. Reynolds told her in 1997 is admissible pursuant to the state of mind exception under Fed. R. Evid. 803(3).

9

for the denial of treatment, i.e., expense.

Defendants also refer to Mr. Reynolds' medical records from 1998 through 2002, which they claim are "replete with evidence of medical visits and medical request slips from [Mr. Reynolds] that specifically reference his HCV and the medical attention and counseling he received for that condition." (Def. Motion at 15 (citing Anicette Aff., Ex. A at 30, 31-35, 36, 37, 41-43, 54, 66-67, 77-78, 97, 108, 112-114, 119)). Thus, Defendants argue, Plaintiff's claims accrued several year ago and expired long before this lawsuit was filed on July 20, 2004.

Plaintiff argues that the statute of limitations must be tolled pursuant to the discovery rule. (Pl. Opp. at 9). Under the discovery rule,

> when a party is either unaware that he has sustained an injury or, although aware that an injury has occurred, he does not know that it is, or may be, attributable to the fault of another, the cause of action does not accrue until the discovery of the injury or facts suggesting the fault of another person.

Tevis v. Tevis, 79 N.J. 422, 432 (1979). According to Plaintiff, Mr. Reynolds was unaware that Defendants should have been providing him treatment for his HCV until the October 16, 2002, filing of Bennett v. CMS, 02-cv-4993, a class action filed in this Court that made such allegations against CMS. (Pl. Opp. at 10). Plaintiff insists that "[t]here is no evidence that Mr. Reynolds knew prior to 2002 that defendants' conduct in failing to supply him with treatment from CMS was medically

10

unreasonable." (Id. at 9). Thus, Plaintiff contends, pursuant to the discovery rule, the statute of limitations "was tolled until such a time as he reasonably should have known that CMS should have been providing him treatment." (Id. at 10).

Additionally, Plaintiff asserts that the statute was tolled during the pendency of the Bennett class action pursuant to the rule set forth in American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974) and clarified in Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345 (1983). In those cases, the Supreme Court held that,

> "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.

Crown, 462 U.S. at 353-54 (quoting American Pipe, 414 U.S. at 554). Plaintiff asserts that because the Bennett class action was filed on October 16, 2002, and sought the same relief as Plaintiff now seeks, "the statute of limitations was tolled as of October 16, 2002." (Pl. Opp. at 11).

The law is clear that "the statute of limitations begins to run when the plaintiff is aware, or reasonably should be aware, of facts indicating that she has been injured through the fault of another, not when a lawyer advises her that the facts give rise to a cause of action." Baird v. American Medical Optics,

11

155 N.J. 54, 68 (1998) (emphasis added); see also Lynch v. Rubacky, 85 N.J. 65, 73 (1981) ("plaintiff must have an awareness of 'material facts' relating to the existence and origin of his injury rather than comprehension of the legal significance of such facts") (citation omitted).  Thus, it is irrelevant that Mr. Reynolds did not realize that Defendants' conduct was "medically unreasonable" until 2002, when the Bennett class action was filed.[5]  Rather, the relevant inquiry is when he became aware of his injury through the alleged failure of CMS to treat him for his HCV condition.

The record shows that Mr. Reynolds knew of these facts as early as 1997.  Plaintiff's own deposition testimony concerning the "hysterical" phone call she received from Mr. Reynolds in 1997 makes clear that Mr. Reynolds was well aware of his HCV condition, the fact that he would not be receiving treatment for it, and the alleged reason for the denial of treatment.  (Pl.

---

[5] Notwithstanding the irrelevance of this allegation, the Court questions whether such allegation is reasonable, as a denial of treatment seems to be a "self-evident" fault, i.e., where the fault is "obviously revealed by the injury itself." Lynch v. Rubacky, 85 N.J. 65, 74 (1981).  In other words, a reasonable person would understand that a failure to treat a potentially fatal disease is not medically reasonable.  The cases cited by Plaintiff in support of tolling the limitations period do not involve this type of self-evident injury; rather, they involve injuries that were obscured due to doctors' equivocal diagnosis, repeated assurances of progress, and highly unusual causation issues.  See Abboud v. Viscomi, 111 N.J. 56, 64 (1988) (citing Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 433-38 (1987); Lynch, 85 N.J. at 74-75; Mancuso v. Mancuso, 209 N.J. Super. 51, 59 (1986)).

Dep. at 22:16 - 25:1).  Moreover, the medical records from 1998 through 2001 repeatedly note Mr. Reynolds' HCV condition and the fact that he was educated concerning his condition.  (Anicette Aff., Ex. A at 31-35, 36, 41-43, 54, 66-67, 77-78, 108, 112-114, 119).  These records contain detailed explanations of his treatment plans which show that he was receiving treatment for HIV but not for HCV.  (Id.).  They also show that Mr. Reynolds was counseled about his treatment plans and that he understood them and agreed to take the medications as prescribed.  (Id. at 93, 94, 104).  Beyond the physicians' notes, the medical records also contain Mr. Reynolds' own handwritten Health Services Request Forms, in which he consistently references his "liver problem."  (Id. at 30, 37, 97, 108).

　　　Given the facts recited in Plaintiff's deposition and recorded in the medical records, it is indisputable that Mr. Reynolds knew in 1997, or at least by 1998, that he was sick with HCV and receiving no treatment for this condition.  This knowledge was sufficient to start the statute of limitations running at that time.  Accordingly, the limitations period began to run in 1998 at the latest, and any claim under the Survival Act expired in 2000, at the latest.  Plaintiff's 2004 claims are therefore barred by the statute of limitations.

　　　Additionally, the Court finds the class action tolling doctrine inapposite to Plaintiff's situation.  That doctrine allows a plaintiff's claim to be tolled during the pendency of

class action until certification is denied.  The certification question in the Bennett action was decided on May 14, 2008, (see 02-cv-4993, Dkt. No. 169), whereas Plaintiff filed her Complaint on July 19, 2004.  By filing this Complaint prior to the certification determination, Plaintiff opted out of the class action and, thus, cannot take advantage of the tolling privilege.  See, e.g., Wyser-Pratte Mgt. Co., Inc. v. Telxon Corp., 413 F.3d 553, 568 (6th Cir. 2005) (adopting rule of district courts that "a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the American Pipe tolling doctrine").  Even if this were not the case, Plaintiff's action expired in 2000, long before the Bennett action was even filed.  Thus, she would not be eligible for tolling regardless of her filing the Complaint prior to certification determination.

Because the Court finds that Plaintiff's claims are barred by the statute of limitations, it need not address the parties' other arguments.  Defendants are entitled to summary judgment.

**CONCLUSION:**

For the aforementioned reasons, this Court holds that the Defendant's motion for summary judgment is granted.  An appropriate Order will issue this date.


Dated:  May 19, 2008                s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    UNITED STATES DISTRICT JUDGE